May it please the Court, good morning. My name is Paul Beckman and I represent the appellants in this case who are Sharon Love, mother of Yardley Love, deceased, Lexi Love, sister of Yardley Love, and Sharon Love as the personal representative of the estate of Yardley Love. This case, Your Honors, involves the granting of summary judgment on behalf of Chartis Insurance Company based upon an intentional acts exclusion contained in the Chartis policies. Contemporaneously with the hearing on the motion for summary judgment as to Chartis, there was also a hearing on the motion for summary judgment filed by State Farm Insurance Company, which had also issued a policy to the family of George Yardley, and in which the Court denied based on a similar intentional acts policy. Well, except that the State Farm policy doesn't include the language any criminal act. It does, Your Honor, but as I hope to explain to the Court, it really makes no difference. The State Farm policy has a criminal exclusions provision in it? It does not. It has an intentional acts exclusion. But the point here is… That may be the point right there. Well, I'd like to try to persuade Your Honors that it's not the point, and here's why. The Court below, Judge Chasnow, ruled that the conviction for Mr. Yardley for second degree murder was, as she said, not conclusive, not collateral estoppel, but would be admitted for what it is worth. She made, Judge Chasnow, made completely independent alternative findings, did she not? Conclusion, did she not? She did. However, the point here is, whether it is an intentional act exclusion that contains the word criminal, or an intentional act exclusion that is merely intentional, the fact that there was a criminal conviction for Mr. Yardley is not conclusive. So you're supposing that the plain language of the policy doesn't mean what it says? No, I'm not saying that at all, Your Honor. Sounds like it. Well, here's the reason. This Court below ruled that the Court was going to be determining the coverage based upon Maryland law. It was a Maryland policy. It was delivered in Maryland. Maryland law would apply. And in Maryland, where somebody may be convicted, even if somebody pleads guilty to a criminal act, the victims of that criminal act are not barred from proving that the underlying facts surrounding that criminal conviction are ones which can be explained in the way of this case, voluntary intoxication. There is a criminal conviction admitted for what it was worth, and you all were offered the opportunity to rebut the presumption that the criminal conviction was other than what it was. And as I understand the record, there was no evidence produced. Your Honor, that is absolutely not the case. So what is it? Contained in the record extract, and it is hundreds of pages, includes the writ of habeas corpus that was filed by Mr. Eugley. Within the writ of habeas corpus is declarations from psychologists, from toxicologists, which specifically identify why, based upon their review, this action was totally mitigated by his intoxication. In addition, we submitted an affidavit. So how is that relevant to whether or not there was a final criminal conviction? The point is, it's not conclusive, Your Honor. We have the right, the Loves have the right, to prove and contest that criminal conviction. That is the law of Maryland. That is the law that applies in the Brohan case, which has been cited by us. And it is not preclusive, and we have the right to explain it. Not only that... Well, you have the right. It was rebuttable. It was rebuttable, and it was rebutted. And what Judge Chazanow said in the companion case of state... In your case, is your argument that the rebuttal evidence is that you have evidence in a habeas corpus proceeding? Not only. There is also an affidavit that we submitted, which is in the record, by Dr. Blumberg, who is a psychiatrist, who reviewed all of the testimony, all of the testimony of the depositions that were taken in the civil case in Charlottesville relating to the intoxication issue, and also a review of the reports of Dr. Sady, S-A-A-D-Y, the review of the reports of Dr. Hendricks, the review of the report of Dr. Aaron, the review of the entire petition, to establish that there was more than sufficient evidence creating a question of fact as to whether or not Mr. Eugley could have formed the necessary intent to have committed the crime. But, you know, he's been convicted by a jury. His conviction's been affirmed by both of them, by the appellate court in Virginia, the Supreme Court of Virginia, and the U.S. Supreme Court denied review. So, I mean, this has, you know, been already this issue about whether there was the required mens rea to commit the crime because of the alcohol. I think all that's been already adjudicated. But, Your Honor, the court specifically said that's not res judicata. There's no conclusive effect to that. And that is the law. Res judicata, though, is to what? As to the conviction. Wait a minute. You can't answer the question if we haven't asked it. I'm sorry, Your Honor. The question is whether or not it's res judicata as to some underlying issue or whether or not that there is a criminal conviction, which I think is what Judge Brenkema's question went to. It would appear that the criminal conviction is final. There was a rebuttable presumption of that to which you could have presented evidence. And what your pleadings or evidence may be in a civil habeas corpus proceeding, I don't see how that goes to whether or not there is a fact of a criminal conviction. Your Honor, my point, and maybe I just didn't articulate it well enough, is that the court had ruled that there are three things that could happen with this criminal conviction as to its admissibility. It could be admitted because of the criminal conviction and would be basically conclusive. Secondly, it could be admitted for what it's worth. And thirdly, it could be of no effect. What Judge Chasnow said, it could be admitted for whatever it is worth. What we presented to the court below was evidence from which the court could have concluded. But didn't. But didn't. I'm still, I'm really struggling to understand your argument. Okay, so your... Is voluntary intoxication a defense to second-degree murder in Virginia? It is not, but that's not the point, Your Honor. It's, it, excuse me, I'm sorry. It doesn't even appear that the argument is, as I read the papers, that it's not a defense to second-degree murder. It was, Mr. Hughley never denied intending to hit or assault. He denied that he intended the result. So it's, it's an intentional act no matter how, no matter how you look at it. Well, Your Honor, the fact is that what Judge Chasnow said, and I agree with her statement in evaluating this, is you have to look to the subjective approach, which is what she did when she analyzed the same evidence in the State Farm case. I don't, I'm not understanding. Well, what she said in State Farm is that there was a question of fact relating to intoxication affecting whether or not the... Whether it was intentional. Whether it was intentional. That policy does not include any criminal act. It is limited to intentional acts, and that, in my view, is the significant distinction, and I think that's really what Judge Chasnow was focusing on. The two insurance policies are different, and the real difference is that inclusion of, and it has the word any and then the word criminal, and I can't get away from that language of the insurance policy. The issue, Your Honor, that we see is that this issue has come up before in Maryland, where somebody commits an act that is criminal, and is convicted and has pled guilty to it. That is not a bar in a subsequent civil suit contesting that conviction and explaining Do the policies in those cases exclude criminal acts? Intentional acts. No, that's not answering my question. Do they exclude criminal acts? They don't, but they refer to conviction of a crime. In this case, in the Brohan case, which I would urge Your Honors to take a look at, is an assault case, where someone had pled guilty to an assault, and after that had been done, brought a civil case, and the insurance company denied this was an intentional act, and she pled guilty, and as a result, the Court of Appeals said no. The tort victim has a right to contest that and explain it. That's exactly what we believe we are entitled to do here. What do you think you did? You were given by the district court an opportunity to rebut the presumption of the criminal conviction. Why was that not the opportunity you say you are seeking? We did it. We did it when we submitted the supporting documentation to the opposition, and in particular, the affidavit of Dr. Blumberg. And Your Honor, just to put this in perspective, this is not a case where somebody had a couple of beers. We are familiar with the record. And here, it was 45 beers or drinks within a 30-hour period, with an estimate of a .38 alcohol level, which directly affected the ability of Mr. Eubly, we contend, to have the intent to commit a crime. A jury of 12 people with a burden of proof that's higher than what exists in the civil world found beyond a reasonable doubt. That's an element of the offense. He could not have been found guilty if the jury did not unanimously agree that the intentionality had been established, and the Court of Appeals, when it reviewed the case for substantial evidence, or sufficiency of the evidence, agreed with that. I don't see how you can get a ground back. Your Honor, if Judge Chasnow had ruled that it was conclusive, then I would agree with you, but she did not. So you agree that it was conclusive? No, I do not. I think that it is clearly not conclusive. That's the law, and that's why we have the right to contest this claim. That is the law. We've cited not only cases from Maryland, we've cited the majority rule cases around the country that deal with this same issue where there is a crime. It is also, Your Honor- Was any case where the insurance policy involved, if there was one involved in the case, had an exclusion for criminal convictions? I can't cite one one way or the other where there is a criminal conviction, but Your Honor, if you look at the restatement of judgments, which we've cited in our brief, it gives an example that is remarkably similar to what we have here. D strikes X, X is killed, X is charged with intentional homicide, X is convicted. The victims of X bring an action against X. Well, there's been a conviction, but what the restatement says is that it is not precluded by the conviction and from showing that the defendant's actions were negligent rather than intentional. That's what we ask. We ask for our day in court to prove it, and we did provide Judge Chasnow with ample evidence, which she used in the State Farm case, but she didn't use in this case. And I think I have reserved a few minutes for rebuttal. Ms. Moffitt. Hello to that. May it please the Court, Stacy Moffitt, on behalf of Chartist Property Casualty Company. We are here today seeking the affirmation of the summary judgment properly granted by the District Court in favor of Chartist based on the criminal acts language expressly included in both the homeowner's and excess insurance policies. A fundamental aspect of any contract interpretation going to Williston itself is to give evidence that every word in a contract meaning, and not... I'm sorry, Your Honor, were you going to ask? No, I was just going to say, I think part of the argument is that it's in a section labeled intentional acts, and so I assume you're going to address that. Yes, Your Honor, I am. And what I would point out, Your Honor, in addressing that is that not only is the language in the Chartist policy fundamentally different from the State Farm policy because of the word criminal acts, but that headings and captions in an insurance policy are intended to direct the insured to important areas of the policy, in this case exclusions, that are going to call their attention to those provisions for them to read, to understand how coverage is limited. Are you aware of any cases in which courts have found that the caption in an insurance creates an ambiguity in a situation like this? No, I am not, Your Honor. In fact, there are a number of cases that we have cited in our papers, including this Court's holding in Provident Life and Accident v. Anderson, where this Court actually described the caption as inept, and said, resort may be had to the caption only to explain an ambiguity in the operative part of the clause not to create an ambiguity where none exists. Also, where the recital or caption in an insurance policy is vague, but the operative part is explicit, the operative part controls. A heading does not in and of itself create an ambiguity. And in this case, there is no ambiguity. Not only do we know that because the language itself is clear and expressed, we know that because the Court of Appeals and the Court of Special Appeals of Maryland, which controls the interpretation of this policy, has held that these exclusions are unambiguous. That is the Aragona case and the Azado case. In both of those cases, the Court held that exclusions that include language, dishonest, and unethical are unambiguous, and that the exclusion applied. I believe it was the Azado case where the lawyer had stolen money from the partnership's trust account, and the Court explicitly held that the criminal act's exclusion controlled, even though the lawyer's conduct could have been both simultaneously legal malpractice, i.e. negligence, and criminal. And the Court said that that was unambiguous and that the exclusion applied. As I understand the opposing counsel's argument, he would say that assuming your analysis of the contractual language is correct, that notwithstanding that language, they are allowed to attack the finding of a criminal conviction by the evidence they have in the habeas corpus proceeding, and I guess set aside the criminal conviction for purposes of the insurance policy. So how do you respond to that argument? A couple of ways, Your Honor. Number one, the law is very clear coming from the Supreme Court. The two avenues of direct appeal have been exhausted. Habeas corpus does not change the defendant's conviction. It does not re-litigate his claim of innocence. Mr. Hughley has now availed himself of every appellate opportunity he has under state and federal law. The conviction is final and cannot be changed. Moreover, though, Your Honor, Well, the habeas is a collateral attack on the conviction. It is, Your Honor, and I don't dispute that, but the case law is clear. It does not challenge his innocence. The conviction itself remains, and he has gone through and exhausted every avenue of appeal. But more significantly, Your Honor, the opportunity was presented to rebut the conviction. That is what we are relying on, not the intent. Every single case that the appellant has cited this Court to involved intentional exclusions, including the seminal case in Maryland of Brohan. In the case in Brohan v. Transamerica, the issue was whether or not the guilty plea was sufficient to establish the defendant's intent to assault. We are not addressing Mr. Hughley's intent. We are addressing the criminality. All right, so just to be clear, in that case, the insurance policy did not include criminal acts as an exclusion? Correct, Your Honor. That case specifically, the exclusion reads, to any act committed by or at the direction of the insured with the intent to cause injury or damage to person or property, period. There is no criminal language in that exclusion. And that is the fundamental difference, as you've noted, with the State Farm exclusion. In fact, the exclusion in State Farm, which the appellants have submitted Judge Chasnow's decision in their addendum, the exclusion in State Farm exclude coverage for injuries that are, quote, either expected or intended by the insured. That's why in that case, Judge Chasnow properly looked to the subjective intent of Mr. Hughley. An appellant is correct. The law is clear in Maryland and other states that you cannot look to a conviction to establish intent. That's why Chardas is not doing that and that's why their policy is so significantly different. Your Honor, though, to get back to your question a moment ago, appellants as well as Mr. Hughley were provided the opportunity and Judge Chasnow asked explicitly, what evidence is there, and time and time again, including through this morning, the only thing any court is directed to is the alleged level of Mr. Hughley's intoxication. The law of Virginia, the law of Maryland, and I suppose most other states is very clear. Intoxication is not a defense to any crime other than first degree murder and Mr. Hughley was not convicted of first degree murder. It was not and it does not challenge the criminality of the conduct for which he was convicted, which I would note under Virginia law requires malice. Even under appellant's argument, which I vehemently disagree with and think it is an absolute misstatement of the policy's language, even under their interpretation, the conviction required malice. As your Honor, Judge Duncan noted, however, Mr. Hughley's own statements and of course, one of the arguments we have made throughout this case is that Chartist was denied any opportunity to take an examination of Mr. Hughley and he had breached his duties to cooperate. One of the responses we got back to that was, you don't need his deposition. He made a statement to the police. Well, the statement he made to the police was that he kicked down her door, a crime. He put his hands on Ms. Love despite the fact that she was cowering in the back of her bed, a crime. They wrestled on the floor causing her nose to bleed, an assault and he tossed her back on her bed. By his own admissions, he's committed crimes. The Love's torch suit is based solely and exclusively on those crimes. Every single count that they have alleged from simple negligence to the most extreme gross and willful conduct for which they seek punitive damages is based on his criminal conduct. Not only can nobody point to any evidence that would undermine the conviction, nobody would because that would undermine the torch suit. That's the point for which we're here is the civil suit. So they have been given opportunities. They cannot, they would not because we know he's committed a crime and that is the crime for which there is no insurance coverage available. The criminality language in the insurance policy is in the defense of the person who is a disjunctive. They're separated by commas in the exclusions, the word or. Appellants have argued that this court should apply principles of where the general is used and specific words are then used to limit the language, sui generum. That is not the case here. Criminal, intentional, dishonest, willful are equally general terms. Conduct can certainly be criminal and at the same time intentional or not. Conduct can certainly be fraudulent and at the same time criminal or not. Conduct can certainly be dishonest and at the same time criminal or not. They are nowhere limiting or modifying each other. And so the plain language of the policy has to be given effect or else the fundamental manner in which we interpret insurance policies would be entirely undermined. Briefly, your honors, and I've commented on this, but I do want to raise the issue again. Chartists from the inception asked Mr. Hughley to appear so that they could take an examination, not solely to determine the issues for which we are here on, but also more fundamental issues. Mr. Hughley's residence, the murder occurred while he was still at the University of Virginia as a student, so issues of his residency were a legitimate question. And the record is clear, the exhibits that we had submitted with our summary judgment, that time and time again, Mr. Hughley through counsel refused for any purpose to sit for an examination. Even after all of his rights of appeal had been exhausted and therefore his Fifth Amendment rights to self-incrimination were no longer applicable, he continued to refuse. So Chartist has been greatly deprived and prejudiced by Mr. Hughley's breach of his duty to cooperate, which is set forth in both the homeowners and excess policies. And I raise that here, Your Honor, because part of what the appellant has argued is that they were denied an opportunity. They were denied an opportunity to do discovery and present evidence on Mr. Hughley's intoxication. But at the same time, Chartist from the inception has been denied every opportunity to speak with and interview Mr. Hughley. So it appears that the appellant is taking very contrary positions. They should be entitled to do discovery as to something that quite frankly with regard to this policy is wholly irrelevant. And at the same time, Chartist should be denied their contractual right to take an examination of Mr. Hughley, but that shouldn't trouble anybody, including Mr. Hughley, seeking the benefit of the contract. So for all those reasons, Your Honors, I would ask that the lower court summary judgment on behalf of Chartist be affirmed. If there are no other questions, thank you very much. Just briefly, Your Honors. I just want to read shortly from the opinion in Brohan. Ms. Moffitt, Judge Chasnow both said Maryland law controls. This is the case of Brohan versus Transamerica Insurance Company. A plea of guilty to a criminal charge may be introduced in a subsequent civil proceeding as an admission. Same thing Judge Chasnow held. But this admission does not conclusively establish liability. Instead, it may be rebutted or explained in the subsequent civil case in which it is admitted. Consequently, Mrs. Brohan should be given an opportunity to explain her plea of guilty in the assault charge in the pending actions. Judge Agee, I respectfully would submit to Your Honor that we took Judge Chasnow with her question to produce evidence in support of rebutting the presumption. And it's specifically contained in the record extract, not only in the habeas, not only in the declarations, but also in the expert report under oath affidavit of Dr. Blumberg, which questioned the ability of Mr. Ugly to form the intent necessary. That clearly creates a question of fact. I'm sorry, I still think you're mixing apples and oranges. Because this again is a case, the issue before us and before Judge Chasnow is whether or not the exclusions in this insurance policy operate, right? Correct. And this policy has a clear exclusion for any criminal act. So it's not an issue about what can be done in the civil case. The question is whether or not the insurance company has to provide the cost of defense and indemnification if there's an award. I mean, the family can still sue for damages. The issue is whether the insurance company is going to get involved in this case. That's what's going on here. And this policy says any criminal act. And the Brahman case, at least your opposing counsel indicated that whatever insurance was involved in that case, if there was a policy, it doesn't have the explicit type of exclusion that we have here. But perhaps I'm not articulating my position clear enough. My position is criminal act, intentional act, crime, a conviction under Maryland law. Even if it is a crime, you have the right to rebut it. And we were not given that opportunity to rebut it. We presented evidence that I suggest is relevant to that. That is the law of Maryland. That controls this policy. So, Your Honor, I respectfully submit that we have met that burden. There is a question of fact. There was a question of fact under the state farm policy where the same evidence was produced where the court found there is an issue of whether or not this was intentional. Even if this is an intentional act, the same rules would apply. We have the right to contest it. And that opportunity has been taken away. Thank you. We'll ask the clerk to adjourn court for the day and come down in Greek Council. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Allyson K. Duncan, G. Steven Agee, Leonie M. Brinkema